(69 App. Div. 112.)

FENN v. DRYFOOS et al.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

SALE OF GOODS—PERFORMANCE—GOOD FAITH.
    Defendant contracted to sell, and plaintiff to buy, 4,000 silk skirts,
    to be delivered as plaintiff should order them within four months. After
    delivery of a small portion of the skirts, plaintiff expressly repudiated
    the contract, and defendant stated that he would not release him from
    the obligation thereof. On the day preceding the last day on which de-
    livery could be made under the contract, plaintiff demanded the delivery
    of the entire residue of the contract quantity, being 3,740 skirts, on the
    next day. Held, that the question as to whether plaintiff's order was in
    good faith, so as to entitle him to damages for defendant's failure to
    deliver, or was resorted to as a device to place defendant in default,
    was for the jury.
    Laughlin, J., dissenting.

Appeal from trial term, New York county.

Action by William B. Fenn against Louis Dryfoos and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

The plaintiff was the assignee, under a written instrument duly executed, of all claims and demands of whatever nature Russell Uhl had against the defendants. The latter agreed with Uhl to furnish him with certain silk and silk skirts pursuant to the terms of the following written contract:

"Memorandum of agreement made this nineteenth day of March, 1900, between L. Dryfoos & Co., New York City, parties of the first part, and Russell Uhl, Wilkes-Barre, Pa., party of the second part. In consideration of one thousand dollars ($1,000) lawful money, paid to the parties of the first part January 8th, the parties of the first part agree to accept an additional order from the party of the second part for two thousand five hundred (2,500) silk skirts at $4.85 net cash. The quantities of colors are to be divided into the following assortments: One thousand two hundred (1,200) violets, eight hundred (800) blues, and five hundred (500) reds. One thousand five hundred (1,500) black silk skirts, at $4.60 net, or five thousand (5,000) yds. 36 in. black silk at $1.06 per yd. This skirt is to be finished with stiffening, no velvet finish, and made with two ruffles; quality of silk same as samples of silk delivered. The one thousand dollars ($1,000) paid by the party of the second part to the parties of the first part on January 8th as a deposit on order placed on that date is to be held as a deposit from the party of the second part, as a guarantee of good faith that the party of the second part will take up these four thousand (4,000) skirts, or five thousand (5,000) yds. of black silk, and two thousand five hundred (2,500) colored skirts, ordered this day, on or before September 1, 1900. It is especially stipulated that the payment of one thousand dollars ($1,000) is not to be credited on any payment of the party of the second part to the parties of the first part till the completion of this order, and the one thousand dollars ($1,000) cannot be applied upon any other payment, except on the last shipment of this order. It is furthermore expressly stipulated that this order, and the orders taken January 8th and January 31st, are to be paid for within five days after shipment. The clause in the contract of January 8th, permitting the one thousand dollars deposit to be applied upon the last shipments of that order, is hereby void and canceled. The price quoted and accepted is for this lot of four thousand (4,000) skirts only, and the price cannot be guarantied for any future orders. The delivery of this order is to commence on or about May 1, 1900, and the delivery is subject to labor strikes, accident by fire, or other unavoidable casualties.

"Signed this nineteenth day of March, 1900.

"Parties of the First Part:
"L. Dryfoos & Co.

"Jno. F. Williams.

"Party of the Second Part:
"Russell Uhl."

On April 28, 1900, Uhl wrote the defendants: "We have decided to have all our skirts made 53 in. in hip measure. Ship May 5th, via L. V. R. R., freight." Then follows an order for 306 skirts of different colors. "And duplicate the order and ship May 12th, also via freight." On May 28, 1900, Uhl wrote:

"Your several favors containing invoices and statements received. These, with what skirts I have on hand, will last me 60 to 90 days, unless trade improves. The demand grows less every day. Therefore do not make me any skirts until further orders. Cancel the entire order, as I will be obliged to send you a 60-day note for the balance due you when the invoices are due. Hoping this will meet with your sanction, I am

"Yours, very respectfully,　　　　　　Russell Uhl."

To this letter the defendants promptly replied that they would not release said Uhl from the contract, but would hold him thereto, further adding:

74 N.Y.S.—34

"We are willing to assist you as far as we are able to do so without detriment to ourselves. While it is not our custom to accept notes in payment of bills, we will this time make an exception, in order to accommodate you, and take your 60-day note, provided you add interest at the rate of 6 per cent. per annum." No further order for skirts being made by Uhl, on June 20, 1900, defendants wrote to him the following: "We feel obliged to ask you to take some of the goods we have on order for you, as the manufacturer is continually delivering goods to us, and we cannot afford to be continually paying out our money week after week without any return, and we must therefore ask you to use at least 400 or 500 skirts during the month of July." No reply was received to this letter, and on July 10th defendants again wrote Uhl, urging him to send them directions for the shipment of skirts. To this letter Uhl made reply under date of July 11th: "In reply to yours of the 10th inst., I beg again to notify you that I canceled that order before you had received or made a single skirt. Therefore I shall expect you to return me the $1,000 left with you, or I shall be obliged to refuse payment of note maturing next month." On July 12th, defendants replied to the last-mentioned letter, saying in substance that they should hold Uhl to his contract with them, and refused to accept his construction of the matter, and asked him to send shipping directions. No answer or shipping directions were received, after the sending of these letters, until the 30th day of August, when defendants received from Uhl the following letter:

"Gentlemen: According to the agreement made the nineteenth day of March, 1900, between L. Dryfoos & Co., of New York City, parties of the first part, and Russell Uhl, of Wilkes-Barre, Pa., party of the second part, you are hereby authorized and requested to complete the agreement of March 19, 1900, by shipping by freight, via L. V. R. R., on or before September 1, 1900.

| | | | | |
|---|---|---|---|---|
| 1,000 | violet | skirts, | length | 42 inches. |
| 200 | " | " | " | 44 " |
| 600 | blue | " | " | 42 " |
| 76 | " | " | " | 44 " |
| 425 | red | " | " | 42 " |
| 61 | " | " | " | 44 " |
| 1,200 | black | " | " | 42 " |
| 178 | " | " | " | 44 " |

"Hip measure to be made as last shipment, 52 to 53 inches, all skirts to be exactly like sample, both in quality and workmanship.

"Yours, truly, Russell Uhl."

This order was for the entire balance of skirts. To this letter defendants immediately replied:

"We are in receipt of your favor of the 29th inst., and in reply beg to say that we cannot accept the shipping instructions stated therein, because you are not justified in any way to give them.

"Yours, truly, L. Dryfoos & Co."

Defendants never shipped the skirts in question.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Harmon S. Graves, for appellant.
Dean Emery, for respondents.

HATCH, J. It is fairly evident that the parties by their contract intended that the skirts should be manufactured in readiness for delivery as Uhl should from time to time require in his business; that as he needed them the defendants should ship the same upon his order. A fair construction of the contract shows that the parties understood that the skirts or cloth should be shipped upon the

order of Uhl in quantities specified therein, and that the whole amount for which the contract provided should be ordered or taken by Uhl on or before the 1st day of September, 1900. It was not evidently within the contemplation of the parties that the skirts and cloth should be the subject of a single order, or should be furnished all at one time. The skirts were to be manufactured by the defendants, and Uhl was to give directions as to shipments in quantity and time as his business required, limited only by the time when the whole amount contracted for should be taken. It became the duty, therefore, of Uhl to order from time to time within the specified period a fair proportion of the quantity he was to take, and it was the duty of the defendants to fill such orders. So far as the record discloses, the defendants were at all times ready to fulfill the terms of their contract. When, under date of May 28th, Uhl wrote that he canceled the whole order, and stated his inability to pay for the goods already received in accordance with the terms of the contract, it amounted to a breach of the same; and upon the receipt of such letter the defendants would have been justified in treating the contract as at an end and bringing action thereon to recover damages for a breach. A like result also flowed from the letter of Uhl under date of July 11th, wherein he reiterated that he had canceled his order and expected a return of the $1,000 which he had deposited. The defendants refused, however, to recognize, as was their right, a cancellation of the contract, but insisted that the same should be fulfilled in accordance with its terms. This insistance upon their part left it open for Uhl, in accordance with the defendants' request, to fulfill the contract. In this respect he was required to act in good faith and give his orders pursuant to the terms of the contract. He could not suddenly call upon the defendants to deliver the whole quantity of skirts or cloth practically upon demand, and his cancellation of the order so far modified the contract of the parties that the defendants became entitled to a reasonable time to fulfill any order which Uhl should give. In view of the fact that he had given notice that he did not intend to carry out the same, the defendants were not required to continue the manufacture and keep on hand goods, when Uhl had given notice that he would not take them. But, as the defendants insisted that the goods should be taken, Uhl was placed in a position to purge himself of his breach and fulfill his contract. It is claimed that he did so by his order under date of August 30th. By this order he demanded that 3,740 skirts of various colors be furnished to him within two days, including the date of the order. It is manifest, in view of the terms of the contract and the prior dealings, that the defendants could not fulfill that order, and it seems equally clear that Uhl knew that defendants could not make compliance therewith. They had the right, however, to make fulfillment, and also had a reasonable time within which to do it, and, if given in good faith, were bound so to do. They also had the right to regard the order as a mere method resorted to by Uhl to place them in default, given in bad faith and for no other purpose, and in consequence refuse to make compliance with its terms. If the order was not given in good faith, but was resorted to as a

device to place the defendants in default, it constituted a breach of the contract, in effect, the same as though there had been an absolute refusal to fulfill its terms. The acts of Uhl tend strongly to show that this was his sole intention. The question, however, is, does this fact appear so clearly as to present alone a question of law, and, therefore, one to be disposed of by the court? Under the decision·in McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282, we think that this became a question for the jury, and that the direction of a verdict was error. If there was a breach of the contract, the plaintiff was not entitled to recover; but, if there was no breach, the defendants could not retain the money and refuse fulfillment upon their part. We reluctantly reach the conclusion that the court was not authorized to determine the question as one of law.

The judgment and order should, therefore, be reversed, and a new trial granted, with costs to appellant to abide the event

VAN BRUNT, P. J., and PATTERSON, J., concur. INGRAHAM, J., concurs in result. LAUGHLIN, J., dissents.